In re Douglas WILDER, Shirley
Wilder, Debtors.

Douglas WILDER, et ux., Plaintiffs,

v.

BUCKEYE UNION INSURANCE
COMPANY, Defendant.

Douglas WILDER, et ux., Plaintiffs,

v.

DOMINION BANK, Defendant.

Bankruptcy No. 7–92–01335–HPB–13.
Adv. Nos. 7–93–00014, 7–93–00016.

United States Bankruptcy Court,
W.D. Virginia,
Big Stone Gap Division.

Feb. 4, 1994.

Donald E. Earls, Norton, VA, for debt-
ors/plaintiffs.

Henry S. Keuling–Stout, Big Stone Gap,
VA, for Buckeye Union Ins. Co., defendant.

Gregory S. Hancock, Hancock & Bush,
Lebanon, VA, for Dominion Bank, defendant.

## MEMORANDUM OPINION
## AND ORDER

H. CLYDE PEARSON, Bankruptcy
Judge.

The issue in these Adversary Proceedings
essentially is the validity, priority, and
amount of the liens of Buckeye Union Insur-
ance Company ("Buckeye Union") and Do-
minion Bank (now First Union Bank) by
virtue of docketed judgments upon the real
estate of Douglas and Shirley R. Wilder
("Debtors"), the Debtors' home, pursuant to
Rule 7001(2).

On September 21, 1989 the Debtors filed
their joint Chapter 7 case in this Court seek-
ing and obtaining a discharge of their indebt-
edness. Other than a totally encumbered
automobile, the only asset the Debtors sched-
uled, and which was administered in the
Chapter 7 case, was the Debtors' residence
in Keokee, Lee County, Virginia. Following
the § 341 creditors' meeting, Dominion Bank
and, presumably, Buckeye Union requested
that the Trustee abandon the residential
property. These and other creditors ten-
dered to the Trustee for endorsement an
abandonment application under Rule 6007
certifying to the Trustee that the value of the
said residence was $35,000.00 with $40,000.00
indebtedness against the residence. The
Trustee did endorse the application for aban-
donment and the property was thereafter
abandoned under the statutes and rules of
this Court.

Thereafter, Dominion Bank and Buckeye
Union proceeded in state court to liquidate
the Debtors' residence to satisfy their judg-
ments and those of the judgment creditors.
As a result of these proceedings, the Debtors
filed a Chapter 13 case in this Court on June
4, 1992, seeking further relief and proposing
a Plan to pay their creditors to the extent of
creditors' claims.

As a result of the filing of the Chapter 13 case, the within Adversary Proceedings were created from Debtors' objections under Rule 7007 to determine validity, priority, and amount of those liens and to avoid the same if appropriate. Another adversary proceeding was filed questioning the amount of a lien of a first deed of trust of Sovran Mortgage (now NationsBank). (This adversary proceeding concerning the deed of trust has apparently been resolved by payment in full.) At the hearing upon the Adversary Proceedings herein, Motions to Dismiss were filed because of inadequacy of the pleadings; however, the Court placed all parties on notice that the essential issue to be determined by this Court upon a hearing of these Adversary Proceedings was the value of the property and whether or not the liens were voidable and their validity, priority, and amount under Rule 7001(2) because of the prior discharge of the Debtors in the Chapter 7 case, the issue being whether or not there was equity in support of said liens when the Chapter 7 case was filed. (See Buckeye Union's Exhibit B setting forth what essentially the Court had directed would be tried. This Exhibit being a memorandum from counsel to other counsel of judgment creditors.) However, the Motion to Dismiss was taken under advisement with the understanding that the Court would decide the merits of these Adversary Proceedings and rule on the Motion to Dismiss thereafter. For the reasons hereafter stated, the Motion to Dismiss is

### ORDERED

denied; and the Court will proceed to rule upon the merits of the issues before the Court based on the evidence.

When the Chapter 7 case was filed on September 21, 1989, the record reflects that the liens and encumbrances upon the Debtors' real estate consisted of the following:

1. The record and the evidence before the Court upon the hearing herein reflects that the delinquent real estate taxes due and owing to the Treasurer of Lee County at the time of the filing of the Chapter 7 case was approximately $9,261.00. This apparently contains additional penalties and interest attached thereto. This tax, pursuant to Va.

Code § 58.1–3340, constitutes a prior lien ahead of all other liens.

2. The second lien in order was a first lien deed of trust of then Sovran Mortgage (now NationsBank Mortgage) in the then principal amount of $12,993.31.

3. The Debtors filed and properly perfected, in the Chapter 7 case, homestead exemptions in the amount of $9,700.00 claimed in their personal residence.

4. A judgment lien of record, unreleased as of the date of the filing of the petition and apparently remains unreleased, in favor of Powell Valley Electric Coop in the original sum of $582.49 plus interest and costs for the then total of $1,008.88. This judgment was docketed on June 30, 1981.

5. A judgment lien in favor of the Town of Big Stone Gap docketed on March 9, 1982 in the principal amount of $91.00 plus interest and costs for a total of $170.80.

6. The Commonwealth of Virginia had, and which remains unreleased, a tax lien docketed on September 14, 1983 in the principal sum of $1,099.46 plus interest for a total of $1,946.04 as of the date of the Chapter 7 petition.

The foregoing liens and exemption total $35,080.03.

In addition to the foregoing, Buckeye Union docketed its judgment on February 27, 1984 for $13,378.85 plus interest. To date, it amounts to approximately $22,000.00 and with claimed attorney's fees, etc., its claim herein is approximately $27,000.00. Dominion Bank (now First Union), likewise, docketed its judgment subsequent to Buckeye Union in the amount of $14,882.00.

The essential issue for this Court to determine is to what extent, if any, does the lien of Buckeye Union Insurance Company have equity supporting it in the Debtors' residence. (It would appear that First Union's lien is moot even under the most favorable valuation.) The issue then is reduced to evaluation of the Debtors' principal residence upon which all the foregoing liens attached.

The evidence heard and presented, documentary or otherwise, upon the evaluation of

the Debtors' residence consists essentially of the Debtors' testimony, the testimony of an appraiser, Mr. Livesay, in behalf of creditors, and the tax evaluation by the office of the Commissioner of Revenue of Lee County wherein the real estate is situated. The evaluation determination herein is somewhat complicated and difficult for the simple reason that the residence, although viewed from a distance as a valuable structure, is totally misleading.[1] The evidence, however, overwhelmingly shows that the dynamite blasting from mining operations in the vicinity of this residence has wreaked havoc upon the structure causing extensive damage thereto. This is clearly reflected by the evidence and testimony of the appraiser and the Debtor.

The appraiser testified that if the property were in other locations, it would be very desirable and valuable. The infirmities attendant upon the property, including leaks, bricks separated, cracks in the structure, wavy roof, and other damaged portions of the dwelling, results in a diminished value. Although the evidence clearly shows that the foundation, as viewed from the basement of the dwelling, was in a precarious position with main floor support beams cracked and broken from the blasting operations, the testimony of the appraiser indicated that he had not gone into the basement nor reviewed these structural damages in the examination of the property.

The testimony of the appraiser was vague, uncertain, and inconclusive; and the content of the appraisal was made absent a full and complete review and examination of the property in question. The appraiser presented some estimates of repair costs without any supporting evidence as to such costs or any documentation of the needed repairs or, indeed, whether the structure was capable of being repaired in its condition. With some comparables and with some adjustments for repairs which was not detailed, the appraiser gave an evaluation of $51,500.00 for the property. The appraisal was not greatly helpful to the Court for the simple reason that a close examination of the property and the foundation and beams, as well as the other interior portions, were not closely examined. There was also little value to the Court in the projection of cost of repair or replacement. For example, the appraiser stated that the property may be repaired for approximately $27,000.00 which was simply a computation of a percentage amount of his appraised value. The Debtor, who had before retirement been a building, as well as a remodeling, contractor in prior years, testified that the repair of the property, if indeed it was repairable, would cost from $50,000.00 to $60,000.00 or more.

The Commissioner of Revenue's Office of Lee County had made an evaluation of the property of $49,500.00 in recent years. The sole evidence on this point was a tax ticket from the County Treasurer's Office. Therefore, there is no evidence before the Court to indicate that the assessed value for tax purposes in any manner reviewed the damage to the structure or took into consideration the damage thereto and the cost of restructuring, rebuilding or repairing and, therefore, was of little help to the Court.

The Debtor, with experience as a building and remodeling contractor prior to his retirement, testified at length as to the damage that had been wrought upon the property in question by the blasting which apparently continues. The Debtor's testimony gave evidence of the value of the property in a range from $20,000.00 to $30,000.00. The residence has a full basement from which the foundation and broken beams could be viewed and, despite this fact, the appraiser did not go into the basement and view the destruction about which the Debtor testified in great detail. Further, the Debtor testified that the cost of repair and/or reconstruction would cost from $50,000.00 to $60,000.00 and that he had obtained an estimate that exceeded $44,000.00.

The evidence before the Court has been carefully evaluated and considered which shows that the liens set forth herein that existed as of the date of the filing of the Chapter 7 petition in 1989, and remain unre-

---

1. The original structure of the residence had an addition thereto which Debtor added from an insurance recovery due to the loss of Debtor's small son while swimming in a nearby mine shaft.

leased, are in the amounts set forth herein. Most are larger because of the accrual of interest thereon. The entire evidence relating to the value of the residence has been carefully considered by the Court from the testimony of the Debtor, the appraisal by Mr. Livesay, and the tax assessment ticket. In addition, the Court considers significant the opinion of these creditors in the Chapter 7 case in 1989, which included the new addition, that this property had a value as represented to the Trustee of $35,000.00. (See Dominion Bank's Exhibit 5, Buckeye Union's Exhibit H, and Transcript, pages 100 and 108).

From 1989 to this date, additional damage apparently inflicted upon this structure. It is the conclusion of the Court that the value of the property in 1989 and at the present time is $35,000.00. It probably is less today.

Virginia Code § 8.01–458 deals with the perfection and priority of judgment liens. Therefore, at the time the Chapter 7 case was filed, there was no equity over and above the homestead exemption and prior liens to support Buckeye Union's lien.

Further, § 727(b) states that discharges in Chapter 7 cases discharges all debts arising before the date of the petition whether or not a claim has been filed or considered in the case. This is without exception. Accordingly, Buckeye Union and all subordinate liens upon this residence are general unsecured claims and discharged under § 727.

The liens cannot attach to after-acquired property which the Debtors acquire as equity in the property because of paying off and satisfying prior liens. To hold otherwise would not only violate the Debtor's "fresh start" but would nullify and impair the Debtor's homestead exemption under § 522(f). This section provides:

"Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; or . . . ."

This after-acquired equity is free and clear of judgment liens that may have existed at the time of the filing of the Chapter 7 petition. *See Leasing Service Corporation v. Justice,* 243 Va. 441, 416 S.E.2d 439 (1992). *See also,* 11 U.S.C. § 506, which provides for determination of such lien status. These liens may be avoided in this Chapter 13 case. *In re Underwood,* 103 B.R. 849, 851 (Bankr. E.D.Mich.1989); *In re Bland,* 793 F.2d 1172 (11th Cir.1986). The debtor's after-acquired equity cannot be impaired by judgments as here when the exemption is claimed. *In re Weiss,* 51 B.R. 224, 226 (D.Colo.1985); *In re Galvan,* 110 B.R. 446, 447 (9th Cir.BAP 1990). *See also* Bankruptcy, Epstin, Vol. 2, Sec. 8–28. Accordingly, it is

## ORDERED

that the value of the Debtors' residence be and the same is fixed herein in the amount of $35,000.00; that Buckeye Union Insurance Company, First Union, and all subordinate liens not supported by equity are voided as liens upon the Debtors' real estate herein and, therefore, are held to be discharged in the Chapter 7 case.

The Debtors having requested, and the Court having granted leave to file a Plan following the decision herein, it is further

## ORDERED

that the Debtors file a Plan in this case within thirty (30) days from this date; and that these Adversary Proceedings are dismissed and closed.

Service of a copy of this Memorandum Opinion and Order shall be made by mail to the Debtors; counsel for Debtors/Plaintiffs; counsel for Defendants; Trustee; and U.S. Trustee.